UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WILMA KING and ROY LEE KING,
individually, and on behalf of all
others similarly situated,

    Plaintiffs,

v.                                                  Civil Action No.: 2:03-2134

HOMESIDE LENDING, INC.,[1] a
corporation, R. VANCE GOLDEN, III,
and JOHN DOE,

    Defendants.

### MEMORANDUM OPINION AND ORDER

       This matter is pending on the plaintiffs' motion to remand, filed on October 8, 2003.

I.

       According to the amended complaint, plaintiffs Wilma King and Roy Lee King obtained a loan from Mortgage Express Financial Services on or about April 23, 1998.  (Am. Compl. at ¶ 4(a)).  Original defendant HomeSide Lending, Inc. ("HomeSide")

---

[1]  In state court, plaintiffs filed a motion to redesignate the defendant HomeSide Lending, Inc., as its successor in interest, Washington Mutual Bank, F.A., but the case was removed before the state court could rule on that matter.

acquired the servicing rights to plaintiffs' loan on or about January 1, 1999.  (Opp. to Mot. to Rem. at 2).

Beginning in May of 2001, a dispute arose between the plaintiffs and HomeSide concerning repayment of plaintiffs' obligation.  (Am. Compl. at ¶¶ 6-27, 29(a)-(c)).  Plaintiffs allege that HomeSide inaccurately represented the status of their loan account, wrongfully returned payments made upon that account, and failed to credit certain accepted payments to their account.  (Id. at ¶¶ 9, 13, 15 & 17-18 & 24).  Plaintiffs further contend that HomeSide charged illegal fees in the course of servicing their loan and the loans of the putative class members.  (Id. at ¶¶ 28, 29 & 32(e)).

Ultimately, HomeSide declared that the plaintiffs were in default and engaged the non-diverse defendant R. Vance Golden III to initiate foreclosure proceedings under the deed of trust.  (Id. at ¶ 28).  On March 5, 2002, plaintiffs received a letter from Golden seeking $2,394.30 to cure the default, which included attorneys' fees.  (Id.).  It is alleged that, despite receipt by HomeSide of multiple payments from the plaintiffs, Golden, at HomeSide's direction, commenced foreclosure proceedings on November 22, 2002, demanding attorneys' fees and other illegal charges.  (Id. at ¶ 29(d)).

2

On November 16, 2002, federal savings association Washington Mutual Bank, F.A. ("Washington Mutual") acquired HomeSide through a merger acquisition.  (Opp. to Mot. to Rem. at 3; Not. of Rem. at ¶ 6).  Washington Mutual thereupon became successor in interest to HomeSide.  (Not. of Rem. at ¶ 6).

On December 16, 2002, the plaintiffs filed a civil action in the Circuit Court of Clay County against HomeSide and Golden.  (Compl.).  On January 17, 2003, plaintiffs filed an amended complaint alleging the following five claims: illegal collection practices, unauthorized charges, breach of duty of good faith, improper collection of default fees by attorney, and unconscionable contract.  (Am. Compl.).  Four of the five counts in the amended complaint were pleaded pursuant to the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-101, et seq., and the remaining count was based upon the common law duty of fair dealing.  (Id.).  The amended complaint requested that the defendants be enjoined from enforcing similar contracts.  (Id. at 10).

On February 27, 2003, Washington Mutual filed an answer to the amended complaint as "successor in interest to HomeSide Lending, Inc."  (Answer).  In its answer, Washington Mutual

3

asserted preemption under the Home Owners Loan Act ("HOLA") as a defense.  (Id.).

On August 29, 2003, in the Circuit Court of Clay County, plaintiffs filed a motion for preliminary injunction and a motion to redesignate the defendant HomeSide as its successor in interest, Washington Mutual.  (Not. of Rem. at ¶¶ 3-4).  On September 5, 2003, Washington Mutual filed a notice of removal contending that these two motions constituted the "first amended pleadings, motions, orders, or other papers from which it could discern a grounds for removal."  (Id. at ¶ 7 (citing 28 U.S.C. § 1446(b)); Opp. to Mot. to Rem. at 7).  In accounting for the delay in not filing the notice of removal within thirty days of the amended complaint filed on January 17, 2003, Washington Mutual asserted the following:

> Plaintiff filed a Motion for Temporary/Preliminary Injunction and a Motion to Redesignate Defendant. Prior to this time, Plaintiffs only sought relief with respect to actions taken by HomeSide--and not by Washington Mutual--between October 1, 2002, and November 15, 2002.  With these new pleadings, Plaintiffs, for the first time, sought prospective relief against Washington Mutual and, for the first time sought to join Washington Mutual as a party.

(Opp. to Mot. to Rem. at 3-4).  Washington Mutual further claimed that federal question jurisdiction pursuant to 28 U.S.C. § 1331 exists in this case based upon each of two grounds, namely, the

complete preemption doctrine and the substantial question of federal law doctrine.  (Not. of Rem. at ¶¶ 8-9; Opp. to Mot. to Rem. at 4, n. 2; Def. Resp. to Preempt. Brief at 1-9).

Citing HOLA and its corresponding regulations, Washington Mutual asserts that the Office of Thrift Supervision ("OTS") permissibly sought uniformity and occupied the entire field of lending regulations relating to federal savings associations, leaving no room for state law claims.  (Resp. to Preempt. Br. at 2).  Washington Mutual urges that this completely preempted all of the counts in the complaint, including both those that dealt with improper loan fees and those relating to improper servicing of the loan.  (Id.).  Furthermore, Washington Mutual contended a substantial question of federal law was implicated because state law claims could undermine the uniform system of regulation for federal savings associations required by Congress.  (Id. at 7).

On October 8, 2003, plaintiffs filed a motion to remand contending that the grounds asserted for the removal were known more than thirty days prior to the filing of the notice of removal.  Thus, the removal was untimely under 28 U.S.C. § 1446(b) and must be remanded pursuant to 28 U.S.C. § 1447. (Memo. in Supp. of Mot. to Rem. at 10-13; Mot. to Rem. at 1).

5

Within that motion, plaintiffs included footnote 2 which further argued "[d]efendant's stated basis of federal question jurisdiction does not support removal."  (Memo. in Supp. of Mot. at 13, n. 2).

Before discussing the untimeliness matter and the two substantive federal question issues, the court notes that the burden of establishing removal falls upon the removing party. Mulcahey v. Columbia Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994).  Our court of appeals has observed time and again that it is obliged to construe removal jurisdiction strictly:

> We have noted our obligation "to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it.  Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005) (quoting Mulcahey, 29 F.3d at 151). . . . Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims.  See, e.g., Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th Cir. 2004); King, 337 F.3d at 424; Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002); Cook v. Georgetown Steel Corp., 770 F.2d 1272, 1274 (4th Cir. 1985).

Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005).  "Any doubts concerning the propriety of removal must be resolved in favor of retained state court jurisdiction."  Marshall v. Manville Sales, Corp., 6 F.3d 229, 232 (4th Cir. 1993).

II.

Section 1446(b) generally requires that a notice of removal be filed within thirty days of receipt of the initial pleading.  28 U.S.C. § 1446(b).  However, if the basis for removal is not revealed by the initial pleading, a matter may be removed "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable," excluding one exception not applicable in this context.  28 U.S.C. § 1446(b); Lovern v. General Motors Corp., 121 F.3d 160, 162 (4th Cir. 1997).

Washington Mutual is correct that our court of appeals has explained that it "will not require courts to inquire into the subjective knowledge of the defendant," but instead, requires district courts to rely on the "four corners" of the initial pleading or subsequent paper "to determine when the defendant had notice of the grounds for removal."  Lovern, 121 F.3d at 162. The primary concern of Lovern was to avoid a "mini-trial" regarding the timing of the removing defendant's actual knowledge of the basis for removal.  Id.  For this reason, Lovern requires

7

that courts stick to the four corners of the papers filed in determining the knowledge of the removing party.  <u>Id.</u>  The reliance on a given document for this purpose is not limited to the initial pleading.  <u>Id.</u>  Our court of appeals indicated its willingness to

> allow the court to rely on the face of the initial pleading <u>and on the documents exchanged in the case by the parties</u> to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading <u>or subsequent paper</u>.

<u>Id.</u> (emphasis supplied).

Courts in this circuit have read <u>Lovern</u> to mean that those "initial pleadings or other papers" which merely provide "a clue" that removal is available are enough to trigger the thirty day period.  <u>Shonk Land Co., LLC v. Ark Land Co.</u>, 170 F. Supp.2d 660, 662 (S.D. W.Va. 2001); <u>Link Telecommunications, Inc. v. Sapperstein</u>, 119 F. Supp.2d 536, 541-542 (D. Md. 2000) (citing <u>Kaneshiro v. North American Company for Life and Health Insurance</u>, 496 F. Supp. 452, 460 (D. Haw. 1980)).  Based upon the papers filed by both the Kings and Washington Mutual, it is quite clear that Washington Mutual had more than a mere "clue" of the presence of the alleged basis for removal several months before removal on September 5, 2003.  The alleged grounds for removal were evident from the four corners of the amended complaint.

8

Indeed, Washington Mutual's own answer, filed February 27, 2003, demonstrates as much.  Its answer's fifteenth affirmative defense states that "some or all of the claims made in the Plaintiffs' Amended Complaint are preempted by federal statutes and regulations, including without limitation, federal statutes governing thrifts and the regulations promulgated by the Office of Thrift Supervision."  (Answer at 14).  A strikingly similar preemption argument was listed as the basis for section 1331 jurisdiction in the notice of removal filed over six months later.  (Not. of Rem. at ¶ 8).

Washington Mutual's opposition to the motion to remand is premised on its claim that the option to remove could only first be ascertained from the motion to redesignate and the motion for preliminary injunction.  (Opp. to Mot. to Rem. at 1-8).  It states merely that the motion to redesignate is the first attempt to name a savings association as a defendant, and the motion for injunction is the first time Washington Mutual realized prospective injunctive relief would be sought against it.  (Id. at 1, 3-4).  Both of these arguments fail.  The two motions did not disclose any new information nor alter the claims.  (Mot to Redes.; Mot. for Prelim. Inj.).  They merely asked for relief that was already apparent from the amended

9

complaint and which was responded to in the answer.  (Id.).

From the outset, Washington Mutual consistently responded in filings as "Washington Mutual Bank, F.A. as successor in interest to HomeSide Lending, Inc." (Answer; Not. of Rem.; Resp. to Interr. and R.P.D.).  The one page motion to redesignate, filed apparently pursuant to the state court's direction, merely sought formal court approval of what Washington Mutual had already tacitly acknowledged in its answer and other filings.  (Answer; Memo. in Supp. of Mot. to Rem. at 3). Washington Mutual has defended the case since filing its answer in February 2003.  Any argument that the motions filed on August 29, 2003, were the first to signal that plaintiffs were pursuing a case against them is unfounded.

The alleged preemption of HOLA and its corresponding regulations deal with the power of the OTS to make uniform laws regulating federal savings associations.  Implicit in some of the statements made by Washington Mutual is the argument that HOLA preemption was not available for removal purposes previously because HomeSide was a corporation and not a federal savings association such as Washington Mutual.  Nevertheless, Washington Mutual cannot fairly argue that it needed to be officially redesignated as a proper defendant in place of the former

10

corporate defendant in order to contemplate removal.  Indeed, its removal was filed without any action by the state court on plaintiffs' motion to redesignate the defendant HomeSide as Washington Mutual.

Washington Mutual's argument that it could not have anticipated having to defend against "prospective injunctive relief" is likewise unavailing.  (Opp. to Mot. to Rem. at 3). The prayer for relief in the amended complaint asked the "court to enjoin the defendants from any further attempt to enforce the contract or assert liability thereunder, and that the contract be declared void." (Am. Compl. at 10).  Washington Mutual answered this very document in February 2003 and cannot claim to be surprised six months later when a motion for injunction is filed. In seeking injunctive relief against Washington Mutual, it is clear from the express language of the motion that it is grounded on the activities of HomeSide and Washington Mutual dba HomeSide Lending, Inc., thereby defining the scope of the motion in keeping with the amended complaint.

The thirty day period began to run with the filing of the amended complaint.  Because the notice of removal was filed more than thirty days after the amended complaint, the motion was untimely under 28 U.S.C. § 1446(b).  Subject matter jurisdiction

11

is, therefore, lacking pursuant to 28 U.S.C. § 1447.  In the
interest of completeness, the court also addresses Washington
Mutual's substantive claim of section 1331 jurisdiction, which
likewise fails.

III.

"Federal courts are courts of limited jurisdiction.
They possess only that power authorized by Constitution and
statute, which is not to be expanded by judicial decree."
<u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377
(1994).  Title 28 U.S.C. § 1441(a) governs federal removal
jurisdiction.  The statute provides as follows:

> [a]ny civil action brought in a State court of which
> the district courts of the United States have original
> jurisdiction, may be removed by the . . . defendants .
> . . to the district court of the United States for the
> district and division embracing the place where such
> action is pending. . . .

28 U.S.C. § 1441(a).

The source of original jurisdiction at issue here is 28
U.S.C. § 1331, which provides "[t]he district courts shall have
original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States."  Removal
is appropriate if the face of the complaint raises a federal

12

question.  <u>Lontz</u>, 413 F.3d at 439.

Our court of appeals recently elaborated on this point by discussing the longstanding well-pleaded complaint rule:

> In determining whether a plaintiff's claim arises under federal law, we apply the well-pleaded complaint rule, which holds that courts "ordinarily . . . look no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331."  <u>Custer v. Sweeney</u>, 89 F.3d 1156, 1165 (4th Cir. 1996).  Thus, in examining the complaint, our first step is to "discern whether federal or state law creates the cause of action."  <u>Mulcahey</u>, 29 F.3d at 151; <u>see also</u> <u>Dixon v. Coburg Dairy, Inc.</u>, 369 F.3d 811, 816 (4th Cir. 2004) ("The vast majority of lawsuits 'arise under the law that creates the cause of action.' ") (quoting <u>Am. Well Works Co. v. Layne & Bowler Co.</u>, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916).).  If federal law creates a plaintiff's claim, then removal is proper.  <u>Mulcahey</u>, 29 F.3d at 151.  The general rule, of course, is that a plaintiff is the "master of the claim," and he may "avoid federal jurisdiction by exclusive reliance on state law" in drafting his complaint.  <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

<u>Pinney v. Nokia, Inc.</u>, 402 F.3d 430, 442 (4th Cir. 2005).  In this case, just as in <u>Pinney</u>, "it is undisputed that state law creates the claims asserted by the . . . plaintiffs, but this does not end our inquiry."  <u>Id.</u> at 442.

There are two bases for the invocation of section 1331 jurisdiction when the face of the properly pleaded complaint is "artfully pleaded" in such a way that suggests federal law does

13

not explicitly create the cause of action.  See e.g. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987).  These two bases consist of the "complete preemption doctrine" and the "substantial question of federal law doctrine."  See id.; Pinney, 402 F.3d at 442-443; Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004).

A.   Complete Preemption

        Complete preemption exists when "the pre-emptive force of a [federal] statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987).  "When a federal statute wholly displaces the state-law cause of action through complete preemption, the state claim can be removed." Davila, 542 U.S. at 207; see also Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8 (2003).

        The doctrine of complete preemption is starkly different from the defense of federal conflict or ordinary preemption.  Metro Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987); Pinney, 402 F.3d at 449.  "Under ordinary or conflict

14

preemption, 'state laws that conflict with federal laws are preempted, and preemption is asserted as a federal defense to plaintiff's suit.'" Sonoco Products Co. v. Physicians Health Plan Inc., 338 F.3d 366, 370-71 (4th Cir. 2003).

> The absence of a federal cause of action says nothing about whether the state claim is preempted in the ordinary sense: it is entirely within the power of Congress to completely eliminate certain remedies by preempting state actions, while providing no substitute federal action.  But in such cases, preemption serves only as a federal defense, the barred claims are not completely preempted, and thus not removable to federal court.

King v. Marriott Int'l, 337 F.3d 421, 425 (4th Cir. 2003).  A case cannot be removed pursuant to section 1331 solely on the basis of federal conflict or ordinary preemption defenses but can be removed if the complete preemption doctrine applies.[2]  Pinney, 402 F.3d at 449; King, 337 F.3d at 425; Abbot v. American Cynamid Co., 844 F.2d 1108, 1111 (4th Cir. 1988).

    Our court of appeals has set forth the test that must be met in order to show that complete preemption is present. "[A] defendant must establish that [1] the plaintiff has a 'discernible federal [claim]' and [2] that 'Congress intended

---

[2]  It is important to note the federal preemption defense may still be properly raised in state court if the complete preemption doctrine is found not to be present and remand is appropriate.  See e.g. Caterpillar, Inc., 482 U.S. at 397; King, 337 F.3d at 425.

[the federal claim] to be the exclusive remedy for the alleged wrong.'" <u>Pinney</u>, 402 F.3d at 449 (<u>citing</u> <u>King</u>, 337 F.3d at 425).

Washington Mutual argues that this case was "expressly preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, <u>et seq.</u>, and the regulations thereunder promulgated," specifically 12 C.F.R. § 560.2. (Not. of Rem. at ¶ 8-9; Resp. to Preempt. Brief at 2-5). The court notes that sections 1463(a) and 1464(a) authorize preemption of state laws affecting the operations of federal savings associations (which HomeSide is not), and pursuant to which 12 C.F.R. § 560.2(b) preempts state laws purporting to impose requirements regarding, for example:

> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>     . . .
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages . . ."

12 C.F.R. § 560.2(b)(5) and (10).

Washington Mutual, however, has not argued that an exclusive federal cause of action exists under HOLA or its corresponding regulation in 12 C.F.R. § 560.2. (Resp. to Preempt. Br. at 1-8). Instead, it focuses solely on the regulation's intention for the OTS to occupy "the entire field . . . without regard to state laws . . . ." 12 C.F.R. § 560.2(a).

16

This argument is more akin to a defense based on ordinary or conflict preemption rather than a contention that complete preemption exists as a basis for removal.  (Resp. to Preempt. Br. at 5).

In applying the appropriate test for complete preemption as articulated in Pinney, the court agrees with a recent district court opinion in this circuit that has concluded that, while 12 U.S.C. § 1463(a) and § 1464(a) of HOLA and 12 C.F.R. § 560.2 may preempt the state laws on which plaintiffs rely, HOLA does not provide an exclusive cause of action. McKenzie, 306 F. Supp.2d at 546.  Thus far, the Supreme Court has found complete preemption existed in only three comprehensive federal schemes: Earned Retirement Income Security Act ("ERISA"), Labor Management Relations Act ("LMRA"), and sections 85 and 86 of the National Bank Act.  Anderson, 539 U.S. at 8.  The Court has determined that these three federal Acts have each clearly provided for an exclusive cause of action.  Id.  For example, 29 U.S.C. § 1132(e)(1) of ERISA plainly states "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by . . . a participant . . . ." (emphasis supplied).  HOLA and its regulations fall short of the clear Congressional intent expressed in these three Acts.

17

<u>McKenzie v. Ocwen Federal Bank FSB</u>, 306 F. Supp.2d 543, 546 (D. Md. 2004); <u>see</u> <u>also</u> <u>Pinney</u>, 402 F.3d at 449; <u>Anderson</u>, 539 U.S. at 8.

The court finds that neither HOLA nor any of the regulations cited by Washington Mutual completely preempt the plaintiffs' causes of action inasmuch as there is no exclusive federal cause of action arising under HOLA or its corresponding regulations.  <u>See</u> 12 U.S.C. §§ 1463, 1464; 12 C.F.R. § 560.2; <u>see</u> <u>also</u> <u>Pinney</u>, 402 F.3d at 449.

B.   Substantial Question of Federal Law

The Court in <u>Grable & Sons</u> set forth the test for determining whether a "substantial question of federal law" sufficient to warrant removal is present.  "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  <u>Grable & Sons</u> <u>Metal Products, Inc. v. Darue Engineering & Mfg.</u>, 545 U.S. 308, 314 (2005). Though <u>Pinney</u> was decided prior to <u>Grable & Sons</u>, its formulation remains useful for this analysis.  Our court of

18

appeals, in <u>Pinney</u>, explained the test in similar terms.

> Under the substantial federal question doctrine, "a
> defendant seeking to remove a case in which state law
> creates the plaintiff's cause of action must establish
> two elements: (1) that the plaintiff's right to relief
> necessarily depends on a question of federal law, and
> (2) that the question of federal law is substantial."
> <u>Dixon</u>, 369 F.3d at 816. If the defendant fails to
> establish either of these elements, the claim does not
> arise under federal law pursuant to the substantial
> federal question doctrine, and removal cannot be
> justified under this doctrine. <u>Id.</u>

<u>Pinney</u>, 402 F.3d at 442.  Our court of appeals further elaborated

on the first prong of this two part test.

> A plaintiff's right to relief necessarily depends on a
> question of federal law when "it appears that some . .
> . disputed question of federal law is a necessary
> element of one of the well-pleaded state claims."
> <u>Franchise Tax Bd.</u>, 463 U.S. at 13, 103 S.Ct. 2841.  If
> a plaintiff can establish, without the resolution of an
> issue of federal law, all of the essential elements of
> his state law claim, then the claim does not
> necessarily depend on a question of federal law.  <u>See</u>
> <u>id.</u> at 13-14, 103 S.Ct. 2841; <u>see also</u> <u>Dixon</u>, 369 F.3d
> at 817 (parenthetical omitted).

<u>Pinney</u>, 402 F.3d at 442.  In this case, the claims in the amended

complaint rely entirely on state law.  (Am. Compl.).  Washington

Mutual has not alleged that a question of federal law is an

element of any of the five claims.  (Resp. to Preempt. Br. at 6-

8).

Moreover, the presence of a federal defense cannot act

as a basis for satisfying the first prong of the <u>Pinney</u> test.

19

402 F.3d 442-443.  "'[I]t has been well-settled law . . . that a
case may not be removed to federal court on the basis of a
federal defense, including the defense of preemption, even if the
defense is anticipated in the plaintiff's complaint, and even if
both parties admit that the defense is the only question truly at
issue in the case.'"  <u>Pinney</u>, 402 F.3d at 443 (citing <u>Franchise
Tax Bd.</u> at 14, 103 S.Ct. 2841).  Even in the context of the
substantial question of federal law doctrine, Washington Mutual's
asserted basis for federal jurisdiction is a disguised preemption
argument regarding the need for a national uniform system of
regulation for federal savings associations without state
interference.  (Resp. to Preempt. Brief at 6-8).  As the court
has found that complete preemption is not present, the type of
preemption allegedly at play here is a defense and not a basis
for removal.  <u>Pinney</u>, 402 F.3d at 442-443.

        In making its argument, Washington Mutual seizes on
statements from our court of appeals and the Supreme Court and
misreads the former.  First, it highlights a pronouncement
relating to the "substantial question of federal law doctrine."

> Where the resolution of a federal issue in a state-law
> cause of action could, because of different approaches
> and inconsistency, undermine the stability and
> efficiency of a federal statutory regime, the need for
> uniformity becomes a substantial federal interest,

justifying the exercise of jurisdiction by federal
courts.

Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir. 1996)
(internal citation omitted).  Washington Mutual then notes that
the Supreme Court has explained "Congress delegated to [the
Office of Thrift Supervision] broad authority to establish and
regulate 'a uniform system of [savings and loan] institutions
where there are not any now,' and to 'establish them with the
force of the government behind them, with a national charter.'"
Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141,
166 (1982).  With this authority, the OTS created a "uniform
federal scheme of regulation."  12 C.F.R. § 560.2(a).  From these
statements, defendant surmises that plaintiffs' claims threaten
to undermine the uniform regulatory scheme enacted by the OTS
pursuant to Congressional mandate.  (Resp. to Preempt. Br. at 7).

        A similar argument based on Ormet was previously
rejected by the Fourth Circuit.  Pinney, 402 F.3d at 448-449.  In
Pinney, the court clarified that, "Ormet did not slacken in any
way the principle that the substantial federal question doctrine
applies only when a disputed issue of federal law is an essential
element of at least one of the plaintiffs' state claims."  Id.
"In Ormet one of the elements of the plaintiff's state commercial
law claim contained a disputed question of federal law: for the

21

plaintiff to establish the element, it had to show that it was an owner (as defined by the federal Clean Air Act) of tradeable emission allowance permits." Id. at 448 (citing 98 F.3d at 807). By contrast here, plaintiffs may establish its state law claims without resolution of any federal issues. (Am. Compl.). The statement Washington Mutual relies on in Ormet is entirely "off the mark because the statement specifically addresses the issue of whether a federal question is substantial enough to justify removal jurisdiction, not the threshold issue of whether a federal question must be resolved in order for the plaintiff to establish a necessary element of his claim." Pinney, 402 F.3d at 448.

Because Washington Mutual has not shown that a federal question of law is implicated by an element of any of plaintiffs' claims, a substantial question of federal law is not present. See Pinney, 402 F.3d at 443, 448-449. Analysis of the first prong of Pinney sufficiently resolves the issue as to this doctrine, and the court need not address the second.

IV.

The plaintiffs' memorandum in support of its motion to

22

remand asks this court to award fees and costs attendant to its motion to remand pursuant to 28 U.S.C. § 1447(c).  (Memo. in Supp. of Mot. to Rem. at 13).  The statute provides that a court remanding a case may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "[A]n award of fees under § 1447(c) is left to the district court's discretion, with no heavy congressional thumb on either side of the scales. . . ."  <u>Martin v. Franklin Capital Corp.</u>, 126 S.Ct. 704, 710 (2005).  The test

> should recognize the desire to deter removals sought
> for the purpose of prolonging litigation and imposing
> costs on the opposing party, while not undermining
> Congress' basic decision to afford defendants a right
> to remove as a general matter, when the statutory
> criteria are satisfied."

<u>Id.</u>  Reasonableness is the standard by which the request must be evaluated.  <u>Id.</u>  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  <u>Id.</u>  Inasmuch as the court concludes that Washington Mutual had an objectively reasonable basis for removal that warranted development, analysis and resolution of the removal issues in this case, the court declines to award the plaintiffs costs and fees in bringing this motion.

23

V.


Accordingly, it is ORDERED as follows:


1.    Plaintiffs' motion to remand be, and it hereby is, granted;

2.    Plaintiffs' request for fees and costs in bringing this motion be, and it hereby is, denied; and


3.    This civil action be, and the same hereby is, stricken from the docket of the court.


The Clerk is directed to forward a copy of this memorandum opinion and order to all counsel of record and to the Clerk of the Circuit Court of Clay County, West Virginia.


DATED: March 30, 2007


John T. Copenhaver, Jr.
United States District Judge


24